# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD ADAMS,<br><br>            Plaintiff,<br><br>    v.<br><br>CORRECTIONAL OFFICER KIRBY, et al.,<br><br>            Defendants.<br>_____ / | CASE NO. 1:06-cv-01484-OWW-SMS PC<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT, WITH LEAVE TO FILE AMENDED COMPLAINT WITHIN THIRTY DAYS<br><br>(Doc. 1) |

I.    <u>Screening Order</u>

        A.    <u>Screening Requirement</u>

Plaintiff Ronald Adams ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on October 23, 2006.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

1  "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

B.   Plaintiff's Claims

1.   Summary of Plaintiff's Complaint

The events at issue in this action allegedly occurred at Wasco State Prison, where plaintiff was housed at the time. Plaintiff names California Department of Corrections and Rehabilitation ("CDCR") Director James Tilton, Warden P. L. Vazquez, Correctional Officers Kirby, Harris, D. Smith, T. Mosley, L. S. McEwen, C. L. Plood, Glenn, and T. Barrier, Sergeant Phillips, M. Tews, Ms. Hayes, Mrs. Pirsich, Mr. Cannon, E. T. Borrero, Captain S. Cheney, and Associate Warden D. L. Johnson as defendants. Plaintiff is seeking monetary damages and injunctive relief.

///
///

2

The events giving rise to the claims in this action began on December 28, 2005, when plaintiff was in the law library to finish up some legal work. Plaintiff asked defendant Tinsley[1] for some legal materials he needed and was told to pick them up from the building officer. Plaintiff alleges that this was an ongoing problem he had complained about and he knew defendant Tinsley was not telling the truth about where he needed to get the legal materials from, but he proceeded to his building anyway. Once at the building, control booth officer defendant Barrier told plaintiff to get away from the door and that he was not going to let plaintiff back into the building for another three hours. Plaintiff kicked the front door and defendant Barrier summoned the yard officer, defendant Kirby.

`Plaintiff alleges that while defendants Kirby, Harris, Smith, and Mosley were escorting him to the program office, defendant Kirby called plaintiff names and pushed him in the back, causing him to trip and fall to the ground. Plaintiff alleges that defendant Cheney was standing outside and witnessed the incident. Defendants Kirby, Harris, Smith, and Mosley walked away and no report of the incident was made.

On December 29, 2005, plaintiff was summoned to defendant Cheney's office to discuss an earlier staff complaint plaintiff had filed. After plaintiff told defendant Cheney that he did not know why she was assigned given that she witnessed defendant Kirby push plaintiff the day before but did not report the incident, defendant Cheney turned the interview over to defendant Flood.

Defendant Flood conducted a videotaped interview with plaintiff and took plaintiff's written complaint. When plaintiff told defendant Flood that approximately fifty to eight inmates had witnessed the incident the day before, defendant Flood said that was a problem and he was going to place plaintiff is administrative segregation to protect the integrity of the investigation. Plaintiff alleges that defendant McEwen also signed the lock-up order.

In January of 2006, plaintiff appeared before defendant Vazquez, who sat in on the Classification Committee hearing regarding plaintiff's staff complaint. Plaintiff alleges that defendant Vazquez and her agents used this time to cover up defendant Kirby's misconduct.

---

[1] Plaintiff failed to name Tinsley as a defendant. (Doc. 1, pgs. 1-2.) Plaintiff is cautioned that he bears the burden of identifying each and every defendant named in this action.

3

Plaintiff subsequently received a Rules Violation Report for kicking the door, written by defendant Barrier, reviewed and signed by defendant Cheney, and approved by defendant Johnson. Plaintiff alleges that kicking the door cannot be classified as a Serious Rules Violation. Plaintiff alleges that during his hearing, defendant Borrero changed the charge to willfully obstructing a peace officer, which is a Serious Rules Violation, in order to have plaintiff transferred to another prison in retaliation for filing a staff complaint.

Plaintiff also alleges that he was subjected to conditions of confinement which violated his rights under the Eighth Amendment, including being housed in a prison ward at the hospital, being cuffed to his hospital bed, being forced to stand outside naked in the cold, and being subjected to a wet, moldy, mildewed mattress.

### 2.    Denial of Access to the Courts

Plaintiff alleges a claim for "denial of access to legal material." (Doc. 1, § IV.) To state a claim under section 1983, a plaintiff must plead (1) that the defendant acted under color of state law and (2) that the defendant deprived him of rights secured by the Constitution or federal statutes. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. The State is not required to enable the inmate to discover grievances or to litigate effectively once in court. Id.

Inmates do not have the right to a law library or legal assistance. Id. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. Id.; Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179, 2180 (2002).

Although plaintiff alleges that he was denied the legal materials he requested from defendant Tinsley, plaintiff has not alleged any facts supporting a claim that he suffered an actual injury in a

4

qualifying legal action as a result of defendant Tinsley's actions. Plaintiff fails to state a claim under section 1983 for denial of access to the courts.

### 3.  Use of Excessive Force

Plaintiff alleges that defendant Kirby used excessive force against him. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff's allegation that defendant Kirby pushed plaintiff in the back, causing plaintiff to trip and fall to the ground simply does not rise to the level of a constitutional violation for use of excessive physical force.

5

4.     Due Process

Plaintiff alleges a due process claim in conjunction with the issuance of the Rules Violation Report and disciplinary hearing. The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Wilkinson, 125 S.Ct. at 2393; Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff has not alleged any facts supporting the existence of protected liberty interest. Plaintiff does not have a protected liberty interest in remaining free from administrative segregation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), or in remaining at a particular prison, Sandin, 515 U.S. at 484; Meachum v. Fano, 427 U.S. 215, 224-25 (1976). Because plaintiff has not identified a protected liberty interest at stake, he may not pursue a claim that he was deprived of liberty without due process of law.

Further, plaintiff's prayer for relief reveals that plaintiff lost time credits. (Doc. 1, pg. 16.) Inmates do have a liberty interest in the loss of their time credits. Sandin, 515 U.S. at 477-78 (citing with approval Wolff, 418 U.S. at 557 (state-created interest in shortened prison sentence is an interest of "real substance")). However, where "success in a . . . [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." Muhammad v. Close, 540 U.S. 749, 751, 124 S.Ct. 1303, 1304 (2004) (citing to Heck v. Humphrey, 512 U.S. 477 (1994)); Edwards v. Balisok, 520 U.S. 641, 648

6

(1997) (applying Heck to a prison disciplinary hearing where good-time credits were affected). Because the punishment imposed at the disciplinary hearing affects the duration of plaintiff's sentence, plaintiff's due process claim is barred until such time as plaintiff invalidates the result of the disciplinary hearing.

### 5. Retaliation

Plaintiff alleges that he was retaliated against for filing staff complaints. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). However, plaintiff has not alleged sufficient facts to support a claim that he was retaliated against for filing grievances and that defendants' actions did not advance any legitimate penological goal. To the contrary, plaintiff admits kicking the building door, for which he was issued a Rules Violation Report. The allegation that defendant Borrero changed charge, without more, is insufficient to support a claim that plaintiff was set up in retaliation for filing staff complaints.

### 6. Conditions of Confinement

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237,

1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128. With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

          a.        Hospital Stay

Plaintiff alleges that while at Mercy Hospital on December 29, 2005, following a medical problem, plaintiff was ordered to stay in the prison ward by the doctor and plaintiff was handcuffed and cuffed to the bed by a leg restraint. Plaintiff alleges this constituted cruel and unusual punishment.

Plaintiff's claim is frivolous. Plaintiff is a convicted prisoner. The acts of housing plaintiff in the prison ward while at the outside hospital, and restraining plaintiff in his bed are to be expected given that plaintiff was in custody and outside of prison walls.

          b.        Stay Outdoors in Freezing Weather

Plaintiff alleges that he was forced to stand outside naked in forty degree weather for forty-five minutes by defendant Glenn. Plaintiff has not alleged any facts supporting a claim that defendant Glenn "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety."

Farmer, 511 U.S. at 837. Absent allegations supporting a claim that defendant Glenn acted with deliberate indifference, plaintiff fails to state a claim for relief under section 1983.

### c. Mildewed Mattress

Plaintiff alleges that when he was placed in administrative segregation, there was a wet, moldy, and mildewed mattress in the cell. Plaintiff alleges he complained to defendant Phillips, but he did nothing. Plaintiff alleges he complained to defendants Tews, Hayes, Firsich, and Cannon about the wet moldy, mildewed mattress but they did nothing.

Accepting as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construing the pleading in the light most favorable to the plaintiff, and resolving all doubts in plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969), subjecting a prisoner to a wet, moldy, mildewed mattress could constitute an objectively serious condition. Plaintiff has sufficiently alleged that defendants were aware of the condition but took no action. Accordingly, plaintiff's allegations are sufficient to state a claim against defendants Phillips, Tews, Hayes, Firsich, and Cannon for allegedly violating the Eighth Amendment.

### 6. Conspiracy

Plaintiff alleges the existence of a conspiracy. In the context of conspiracy claims brought pursuant to section 1983, such a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy between defendants and therefore fails to state a claim for conspiracy.

### 7. Claim Against Defendant Tilton

CDCR Director Tilton is named as a defendant. Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley,

607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts supporting a claim that defendant Tilton personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black at 646. Defendant's position as CDCR Director, alone, is not a basis upon which liability may be imposed in this action.

### 8. State Law Claims

Finally, plaintiff alleges various state law tort claims. California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has not done so.

Further, in some cases plaintiff has not identified the legal basis for his tort claim. An action or omission that constitutes a constitutional violation may also constitute a violation of state tort law, but that is not necessarily the case. Retaliation in violation of the First Amendment is such an example. In addition to his constitutional claim, plaintiff alleges a tort claim. However, the court is unaware of any basis under California common tort law allowing plaintiff to pursue a retaliation claim. Plaintiff is responsible for identifying the legal basis for his claims with enough clarity that defendants and this court are placed on notice as to the basis of the claim.

C. Conclusion

Plaintiff's complaint states a claim against defendants Phillips, Tews, Hayes, Firsich, and Cannon for violation of the Eighth Amendment with respect to the wet, moldy, mildewed mattress. However, the complaint does not state any other claims upon which relief may be granted. The court will provide plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the court in this order.

Plaintiff is informed he must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

///

///

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff shall file an amended complaint; and
4. If plaintiff fails to file an amended complaint in compliance with this order, the court will recommend that this action be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

**Dated:** **March 28, 2007**          /s/ Sandra M. Snyder
icido3                              UNITED STATES MAGISTRATE JUDGE